Nott, J.
The object of this motion is to try the question, whe. ther the governor has a right, in case of the sickness of a judge on the circuit, so as to be unable to hold the courts, to appoint a person to perform his duty during the remainder of the circuit.
This is an important question, as it regards the public justice of *501 the country; but it is more so, as it goes to question the constituí tionality of the law, under which the commission is granted.
The case may be considered in a threefold point of view : 1. Whether the act of 1789, under which the commission is granted, is unconstitutional and void. If it is, 2. Whether the governor derives any such power from the act of 1769 ; and if he does, 3. Whether the commission is void, on account of the special recital, that it is granted in pursuance of the authority vested in the governor by the act of 1789.
This court will not lightly set aside an act of the legislature. Tt is the highest exercise of judicial authority, and, therefore, will not be used on trivial, or doubtful questions. But where such act is manifestly repugnant to the constitution, it becomes a duty, to declare it null and void. Our legislature does not possess the political omnipotence, ascribed to the British parliament. It is circumscribed by the pale of the constitution, and must be controlled by it. A constitution is defined, by an eminent judge, to be “ a form of government delineated by the mighty hand of the people.” It is the supreme law of the land. It is the commission from whence legislatures derive their power. It prescribes their limits, and sets their bounds. It says to them, hitherto shalt thou go, and no further. A written constitution, constitutes the great difference between a free government and a despotism. For, whether unlimited power is committed to the hands of one person, or, of many, it is equally liable to be abused. Destroy our written constitution, and the legislature possesses the same omnipotent power, the same arbitrary and unlimited control over the people, as the British parliament. Whenever, therefore, an act of the legislature comes in col. lision with the constitution, the latter must prevail.
The question now is, whether the act of 1789 is of that character. The clause under consideration is in the following words: “If any of the judges on .the circuits shall at any lime happen to be taken sick, or become indisposed, and unable to hold the courts in his circuit, it shall, and may be lawful, for his excellency the governor, to appoint and commission some proper person to sit as judge, and to hold the Courts of Sessions and Common Pleas, in that circuit,” &c. The first section of the third article of the constitution, declares, that “ the judicial power shall be vested in such superior and inferior courts of law and equity, as the legislature shall from time to time direct and establish.” This clause contains a general delegation of power, to establish a judicial system ; and, if there were no restrictive clauses, would necessarily imply a *502 power to prescribe the mode of appointment, the tenure of office, the qualification of the judges, and every other power necessary to carry it into operation. But other parts of the constitution qualify this general power, and direct the particular manner in which it shall be exercised. ■ The latter part of the same clause declares, that the judges of each, that is, of the superior and inferior courts, shall hold their commissions during good behavior; and that the judges of the supreme courts shall, at stated times, receive a compensation for their services, which shall neither be increased nor diminished, during their continuance in office : but they shall receive no fees or perquisites of office, nor hold any office of profit or trust under this State, the United States, or any other power. The 1st section of the 3d article declares, that the judges of the superior courts shall be elected by joint ballot of both houses in the house of representatives.
We find here four indispensable requisites, to constitute a judge of the superior courts. 1. That he should be elected by a joint ballot of both branches of the legislature. 2. That he should be commissioned during good behavior. 3. That he should receive a stated compensation for his services ; and 4. That he should hold no other office of profit or trust. And yet, here is a judge of the superior court, appointed by the governor, and not elected by a joint ballot of both branches of the legislature: commissioned for a limited time, and not during good behavior : required to render his services gratis, and Receiving no stated compensation. All of which is in direct violation of the several provisions of the constitution, above mentioned. The conclusion is, that the, act is inoperative, and the commission void.
It is said there are no negative words, restricting the powers of the legislature in this respect. But, sometimes, affirmative words necessarily imply a negative of what is not affirmed, as strongly as if expressed. And the constitution must be understood in that sense. Tt is a form of government established by the people, in which they have declared in what manner its different branches shall be organized; and the legislature can introduce no other. When the constitution says, “ the judges shall hold their commissions during good behavior,” it means all the judges. The object would be defeated, and that part of the constitution become nugatory; if the legislature could authorise a different mode of appointing judges, and require them to hold their offices by a different' tenure.
This construction accords with that given to other parts of the *503 constitution. The 4th section of the 1st article declares, that “ every free white man,” possessed of the qualifications therein specified, shall have a right to vote for members of the legislature. Here are no negative words; yet, it has never been supposed, that a person not so qualified,'could be authorised by an act of' the legislature to vote. And the constitution has lately been amended, to extend the right of suffrage.
It is also said, that this special provision by the legislature, does not conflict with the general provision by the constitution. But this admits of the same answer. If we recognize a right in the legislature, to delegate the power of appointment in once instance, and to alter the tenure of office, where will it end 1 If the governor can be authorized to appoint for one circuit, why not for a year 1 If in the case of sickness, why not in case of absence from the State, death, or any other vacancy 1 It is the nature of the entering wedge of power, to insinuate itself by small degrees, and gradual advances, until it gets too far to be arrested. It is necessary, therefore, to repel its first attacks, before it acquires too much strength.
But 2. It is said, that if the act of 1789 is unconstitutional, the governor is still clothed with the same authority, by the act of 1769 ; and that act, it is said, is still made of force by the seventh article of the constitution, which declares, that all laws of force in this State, at the passing of this constitution, shall continue, autil altered or repealed by the legislature, &c.
But, admitting it to be of force, it gives no such power. To understand the act of 1769, it is necessary to look back to the situation of this country at that time. This State was then a British province, and the judges were appointed by the king, during his pleasure. The governor, being his representative, was authorized by special instructions, from him, I presume, to make temporary appointments, in a case of sickness, or absence of one of the judges. Previously to that time, there was no court in this State, except in Charleston. The object of the act of 1769, was to divide the State into circuits and districts, and to extend the courts into the interior country ; and it is called to this day, “ the old circuit court act.” Having established courts in the country, it became necessary to declare what judges should hold them. The clause now under consideration, was then introduced in the following words : “ The chief justice of this province, and the assistant judges, and justices, for the time being of the Court of. Generál Sessions of the peace, oyer and terminer, assize, and general gaol delivery, and of the *504 Court of Common Pleas already established in this province; and in case of the absence or sickness of any of them, any person for ^iat commissioned and appointed for that purpose, by the governor, or Commander-in-chief, of this province, shall be the judges of the courts above established.” It is apparent that this clause conveys no new power of appointment; it only requires additional duty to be performed by those judges, for whose appointment provision was already made. Indeed, the provincial assembly could not delegate such power. It would have been intrenching on the king’s prerogative, and, therefore, void.
From this view of the subject, it is unnecessary to make any remarks on that clause.of the constitution declaring that all the then existing laws should continue of force. I will, however, observe, that it is, at least, doubtful whether it was intended by that clause to continue a law of force, which was at war with a fundamental principle of the constitution itself. It was probably intro, duced through abundance of caution, to guard against any doubts which might be supposed to exist respecting the effect the new constitution would have on all pre-existing laws.
It is, however, unnecessary to give any opinion on that point. I am of opinion that the motion in this case ought to be granted. This opinion is formed, not only from the particular clauses of the constitution, and laws which I have considered ; but from the general spirit and principles of the constitution. The judiciary has been emphatically styled the sheet anchor of the government. It is not subordinate to the legislature, but co-ordinate with it, and independent of it. The election of the judges is confined exclusively to the immediate representatives of the people. They have, by the constitution, a freehold in their offices, of which they can not be divested-by the legislature. By the immutability of their salaries, as well as by their exclusion from every other office, all inducement to prejudice, partiality or bias is removed, and every prospect of increasing their own power cut off. The people, themselves, have thus drawn around this branch of the government every guard which could secure its purity, and preserve its independence ; and it is the duty of this court to see that it is not weakened or impaired by legislative invasion. The judges are sworn to support, protect and defend the constitution. By supporting, protecting and defendingj it is meant, that in the performance of their official duties, they shall consider it as the paramount law of the land, and shall give effect to it over every opposing act of the legislature. In this case, I am disposed to give it that effect, and to declare this commission void, *505 on grounds which render it unnecessary to go into a consideration of the third point in this case.
Smith, J.
This motion was made to try the validity oí a special commission, granted by governor Alston, to John B. Holmes, Esq., to hold the Court of Common Pleas and General Sessions, at Jacksonborough, in the spring term of 1814, in the absence of Judge Gkimke, who was sick. Governor Alston, in this commission, expressed that it was issued pursuant to an act of the legislature of the 21st of December, 1799. The whole of the’judges, who were present at the argumeut of this cause, concur in opinion, that this commission was invalid, because it was in opposition to the constitution of the State, and this law passed posterior to the ratification of the constitution.
That part of the constitution which is in opposition to this law, is to be found in the sixth article, first section', which expressly declares, “ That the judges of the superior courts shall be elected by the joint ballot of both houses, in the house of representatives,” And, by the first section of the third article, they arc to hold their commissions during good behavior. But it was argued by counsel, and so held by some of the judges, that such a special commission ivas authorized by the fourth section of the act of the 29th of July, 1769, and sanctioned by the first part of the seventh article of the constitution, which says, that “ ail laws of force in this State, at the' passing of this constitution, shall so continue, until altered or repealed by the legislature. It does not appear to me, that this law of 1769, can authorise the governor to issue such a commission, because the courts to which this law had an allusion, were courts of nisi prius; and it was expressly to these courts of nisi prius, that this authority extended. At that time, there was but one court of original jurisdiction in the then province, which was holden in Charleston. And it will be found, that the authority given to the governor to commission, did not extend to this court of original jurisdiction. All the courts of nisi prius established by the act, have been abolished by the act of the legislature of the Í9th of February, 1791 ; and, by the first clause of that act, they are all made courts of original, and final jurisdiction :■ so that the courts established by the act of 1769, are entirely abolished, by the act of the 19th of February, 1791, posterior, in point of time, to the ratification of the constitution. The act of 1769, therefore, may fairly be said to be repealed, and of course to lose its constitutional sanction under the seventh article.
This act of 1769 will bear another view. It establishes not only *506 courts of nisi prius, but forms certain districts, and locates the court for each district; and afterwards, in the fourth clause, gives chief justice and other judges, power to hold' these courts ; and says, “ in case of the sickness and absence of any of them, any person for that time commissioned, or appointed for that purpose, by the governor or commander-in-chief, &c., shall be judges of the courts above established.” The words, “ the courts above established,” must allude to them, as courts of nisi prius, which are abolished by the act of the 19th of February, 1791; and, therefore, the power to commission and appoint, is abolished with it; or, they must allude to them by name, as Orangeburg, Camden, &c. If so, they are all lost in other names, except Orangeburg and Georgetown : and, therefore, the appointment, or the power to appoint, can extend to no courts but these two. One construction or the other must prevail; and under either construction, the power is abrogated.
But, independently of either of these grounds, l would not give the same construction to the seventh article of the constitution, which has been insisted on. I think that article only intended to prevent any doubts, as to a general dissolution of laws by the ratification of a constitution, or system of fundamental laws, formed by the people in convention ; and not to give any constitutional validity to any law that existed at that time, more than to the laws that should afterwards be enacted. I am, therefore, in favor of the motion.
Bav, Colcock, and Gehxke, Is,, concurred.